UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

MARK ANTHONY CHABAN,

          Debtor.
_____/

Case No.: 14-52133-wsd
Chapter 7
Hon. Walter Shapero

FRED H. FREEMAN, ET AL.

          Plaintiffs,

v.

MARK ANTHONY CHABAN,

          Defendant.
_____/

Adv. Pro. No. 14-05126

## OPINION INCIDENT TO CROSS MOTIONS FOR SUMMARY JUDGMENT

### Introduction

Plaintiff Fred Freeman ("Freeman"), who himself is an attorney, filed this action against Debtor-Defendant Mark Chaban ("Chaban") for nondischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6), and denial of discharge pursuant to § 727. Before the Court is Freeman's Motion for Summary Judgment (Dkt. 21) and what is essentially Chaban's cross motion for summary judgment (Dkt. 37).[1]

### Background

The salient facts are as follows. On December 14, 2010, a complaint in the nature of a fraudulent transfer action was filed in the Macomb County Circuit Court ("Trial Court") by

---

[1] Chaban, in his response to Freeman's Motion, moved for cross summary judgment pursuant to Fed.R.Civ.P. 56(f)(1).

1

Midwest Oil Supply, Inc., Mark Chaban, P.C. (a law firm entity of the Debtor-Defendant Mark Chaban), and Tindall & Co., P.C. (a law firm entity of Michael Tindall), all three of those entities being plaintiffs in that action. That action was filed against various defendants, who were represented in the Trial Court by Freeman. Ultimately, the Trial Court entered an order on January 10, 2012 dismissing that case. Additionally, on January 23, 2012, the Trial Court issued an opinion and order granting the defendants' motion for sanctions and set an evidentiary hearing as to the amount of the sanctions. While that matter was proceeding in the Trial Court and before the evidentiary hearing took place, on January 31, 2012 the plaintiffs filed an appeal to the Court of Appeals, challenging several of the Trial Court's orders, including the orders dismissing the action and granting the defendants' motion for sanctions. On November 21, 2013, the Court of Appeals issued a written opinion ("Court of Appeals Opinion") that affirmed the Trial Court and also opined on the matter of sanctions, specifically stating:

> In this case, for the reasons discussed above, the trial court's decision to award frivolous action sanctions pursuant to MCL 600.2591 was not clearly erroneous. As the trial court held, it is clear from the record evidence that plaintiffs' primary purpose in initiating this UFTA action was to harass, embarrass, and injure defendants. MCL 600.2591(3)(i). Similarly, the trial court's decision to impose sanctions against plaintiffs' counsel under MCR 2.114(D)(3) was not clearly erroneous because the numerous documents he signed throughout the course of these proceedings, including the complaint, first amended complaint, several motions, and several subpoenas, were for the purposes of harassment, to cause unnecessary delay, and to cause defendants to incur substantial legal fees defending against these improper claims.
> ***
> Further, on our own motion, we hold that defendants are entitled to assess actual damages and expenses associated with this vexatious appeal, MCR 7.216(C)(1)(a); thus, we remand this matter to the trial court for determination of defendants' award, MCR 7.216(C)(2).

*Court of Appeals Opinion* at 16-17. On remand, the Trial Court conducted an evidentiary hearing on February 20, 2014, having afforded Chaban and Tindall the opportunity to object to Freeman's

asserted sanctions request. On April 2, 2014, the Trial Court issued an Opinion and Order ("Sanctions Judgment"), concluding: "Pursuant to MCL 600.2591(3)(i), MCR 2.114(D)(3), and MCR 7.216(C), JUDGMENT IS ENTERED in the amount $77,511.22, in favor of defendants, and against Mark Chaban, P.C., Tindall & Co., P.C., Mark Chaban, individually, and Michael Tindall, individually." *Sanctions Judgment* at 6. That sanctions award was comprised of Freeman's attorney fees for both the proceedings in the Trial Court and those in the Court of Appeals.

Chaban filed his Chapter 7 bankruptcy petition on August 1, 2014. Thereafter, as noted, this adversary proceeding was filed, seeking a finding of nondischargeability of the Sanctions Judgment debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6), and denial of Chaban's discharge pursuant to § 727. The plaintiff in this adversary proceeding is Freeman, as assignee of some of the judgment creditors' interests in the Sanctions Judgment. *See Opinion Incident to Motion of Fred Freeman to Withdraw as Attorney and Affirming Standing of Freeman to Pursue this Proceeding* (Dkt. 77).

Summary Judgment Standard

Fed.R.Civ.P. 56 provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Fed.R.Bankr.P. 7056. "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Group v. Rockwell Intern. Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999) (internal citation omitted). The Court should draw all justifiable inferences in favor of the non-moving party and it should not determine credibility or weigh evidence. *Id.* "[T]he mere existence of *some* alleged factual dispute between the parties will not

3

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis original). "There is no genuine issue of material fact when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Williams v. Leatherwood*, 258 Fed. Appx. 817, 820 (6th Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

## The § 727 Count

As stated by the Court on the record at the June 4, 2015 hearing, both Freeman's and Chaban's motions for summary judgment as to the §727 count are denied. That conclusion is required because the § 727 claim(s) in Freeman's complaint require scienter and involve other factual inquiries that constitute genuine issues of material fact, precluding the granting of summary judgment in favor of either party.

## The § 523(a)(6) Count

Freeman's Motion for Summary Judgment asserts, among other things, that the findings and orders of the Trial Court and the Court of Appeals constitute preclusive findings of "willful and malicious injury," thus satisfying the requirements of § 523(a)(6). Thus he argues, pursuant to principles of collateral estoppel, Chaban is barred from now contesting or relitigating those same issues in this Court. Principles of collateral estoppel do apply in § 523 nondischargeability actions. The Sanctions Judgment was rendered by a Michigan state court, and so the inquiry is governed by Michigan's law on collateral estoppel. *In re Livingston,* 372 F. App'x 613, 617 (6th Cir. 2010). Under Michigan law, collateral estoppel applies when:

  (1)  there is identity of parties across the proceedings,

4

(2) there was a valid, final judgment in the first proceeding,
(3) the same issue was actually litigated and necessarily determined in the first proceeding, and
(4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Phillips v. Weissert* (*In re Phillips*), 434 B.R. 475, 485 (B.A.P. 6th 2010) (citing *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002)).

The first element of collateral estoppel is met because (a) Chaban was involved in the Trial Court and Court of Appeals proceedings, given that he was an or the attorney of record for the plaintiffs-appellants (and also his law firm P.C. was an actual party plaintiff); and (b) Chaban's involvement in those state court proceedings was such that those courts found his personal conduct sufficient to sanction him individually, even if he personally (as opposed to his P.C.) was not formally a named party in the proceedings.[2]

As to the second element of collateral estoppel, the Sanctions Judgment was issued against Chaban personally. There was some mention at the June 4, 2015 hearing in this Court that the Sanctions Judgment had been appealed to the Court of Appeals, but that such appeal was stayed or dismissed by virtue of Chaban's bankruptcy filing. Given the recited circumstances and attendant facts, such does not alter the fact that the Sanctions Judgment is a valid and final judgment, at least as to the issue of Chaban's liability for sanctions (as opposed to the amount). Given that the Court of Appeals Opinion, which established that Chaban was liable for sanctions in some amount to be

---

[2] Interestingly, Tindall, who represents Chaban as his attorney in this adversary proceeding, submitted a sworn affidavit in response to Freeman's Motion for Summary Judgment stating that Chaban "was not counsel for any party to the State Court Case" and "did not sign or file any pleading on behalf of any party in the State Court Case." (Dkt. 37, Ex. 4); *but see Sanctions Judgment* at 5 ("Chaban is listed as an attorney of record (secondary attorney) representing both Mark Chaban, P.C. and Tindall & Co., P.C."); *Court of Appeals Opinion* at 9 ("The trial court held, first, that attorneys Chaban and Tindall continued to file pleadings on behalf of plaintiffs in violation of the court's order holding that they were disqualified.").

5

later determined, was not further appealed, that liability issue has been finally determined. What is apparently possibly subject to some continued further appellate proceedings is the Sanctions Judgment's determination only as to the *amount* of the sanctions. If that appeal is revived and continued, conceivably such might only alter the amount of the Sanctions Judgment. However, the determination of the liability for some sanctions by the Court of Appeals is a sufficiently final order for purposes of this nondischargeability proceeding and application of collateral estoppel. The Court will insert a provision in the order pursuant to this opinion dealing with the possibility of a change in the sanctions amount.

The fourth element of collateral estoppel is satisfied in that Chaban first unsuccessfully appealed the Trial Court's original January 23, 2012 order granting sanctions against him. *Court of Appeals Opinion* at 10. Then on remand, as noted, the Trial Court afforded Chaban the opportunity to object to the sanctions proceedings against him, and he did in fact so object. *Sanctions Judgment* at 2 ("Tindall and Chaban have now submitted objections to Freeman's bill pursuant to this Court's February 20, 2014 order.").

As to the third element of collateral estoppel, Michigan law provides that "an issue is 'actually litigated' if it is 'put into issue by the pleadings, submitted to the trier of fact for determination, and is thereafter determined.'" *Phillips*, 434 B.R. at 486 (quoting *Latimer v. William Mueller & Son, Inc.*, 149 Mich. App. 620, 640 (1986)). An issue is "necessarily determined" for purposes of Michigan law if it is "essential to the judgment." *Livingston*, 372 Fed. Appx. at 617 (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971)). "The inability of a court to determine the basis for the prior judgment is, by itself, enough to preclude the defense of collateral estoppel." *Id.* at 618 (quoting *Restatement (Second) of Judgments* § 27 (1982)). To apply

collateral estoppel, this Court "must determine if the issue was actually litigated and was necessary to the decision in the state court. To do this, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment… or hold a hearing if necessary[.]" *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981) (internal citations omitted). As was further stated in *In re Wellever*, 103 B.R. 856, 859 (Bankr. W.D. Mich. 1989):

> Under *Spilman* I think it would be sufficient for the bankruptcy court to look at enough of the state court record to assure itself that the issues it faces in a nondischargeability proceeding were actually litigated in state court and were necessary to the state court judgment. If in one case that means looking at the entire record, then the entire record must be read; if in another case less will suffice, that is all that is needed.

Further support is found in *In re Wien*, 155 B.R. 479, 486 (Bankr. N.D. Ill. 1993) ("[I]t is not necessary for the Court to review the entire record… The Court has been provided with a sufficient portion of the record from the earlier proceeding."). This Court held a hearing and has reviewed the opinions and orders that are specifically germane to the basis for the entry of sanctions against Chaban, specifically, the November 21, 2013 Court of Appeals Opinion and the April 2, 2014 Sanctions Judgment. Those are sufficient, on their face and standing alone, to clearly establish what legal issues were actually and necessarily litigated. The sanctions matter first became an issue at the instance of the Trial Court defendants, who filed a motion for sanctions, which the Trial Court granted and then created a procedure to determine the amount thereof (which was delayed by the appeal). Sanctions at the appellate level became an issue at the instance of the Court of Appeals itself, which remanded to the Trial Court for a determination of the amounts of both trial and appellate sanctions. In each ruling, the legal bases thereof are explicit and there is no question as to what was litigated. Chaban argues that this Court should require Freeman to produce the entire state court record, potentially going as far back as 2011. The Court finds that such is not

7

useful as a matter of practicality nor legally required, pursuant to the above-quoted authorities. Producing any more of the state court record (such as transcripts for the hearings resulting in the pertinent orders) would simply be an inconsequential exercise.

Under § 523(a)(6), "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis original). "Willful" means a deliberate or intentional injury. *Id.* To establish that a defendant willfully injured it, a plaintiff must show that the defendant either acted with an actual intent to cause the alleged injury or a belief that the alleged injury was substantially certain to result from his act. *Phillips v. Weissert* (*In re Phillips*), 434 B.R. 475, 483 (B.A.P. 6th Cir. 2010) (citing *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463-64 (6th Cir. 1999)). "The term malicious is defined as conduct taken in conscious disregard of one's duties or without just cause or excuse." *In re Little*, 335 B.R. 376, 383-84 (Bankr. N.D. Ohio 2005) (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)).

The remaining legal question then is whether or not the Sanctions Judgment actually and necessarily litigated and concluded that Chaban's conduct was "willful and malicious." As noted, the Sanctions Judgment states explicitly that its basis is "[p]ursuant to MCL 600.2591(3)(i), MCR 2.114(D)(3), and MCR 7.216(C)[.]" *Sanctions Judgment* at 6. The first basis, MCL 600.2591, provides:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party *and their attorney.*
> (2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

>    (3) As used in this section:
>       (a) "Frivolous" means that at least 1 of the following conditions is met:
>          *(i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.*
>          (ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>          (iii) The party's legal position was devoid of arguable legal merit.
>       (b) "Prevailing party" means a party who wins on the entire record.

(emphasis added). The Sanctions Judgment explicitly indicates that Chaban was being sanctioned because he filed a frivolous action and his "primary purpose… was to harass, embarrass, or injure" the defendants. There is no material distinction between conduct being "purposeful" as stated by that statute versus conduct being "willful" for purposes of § 523(a)(6). *Black's Law Dictionary* (10th ed. 2014) defines "purposeful" to mean "Done with a specific purpose in mind; deliberate" and such is materially identical to the above definition of "willful." As to the "maliciousness" requirement, it cannot be seriously argued that where one's primary purpose was to "harass, embarrass, or injure," that such conduct is not also in "conscious disregard of one's duties or without just cause or excuse." Therefore, by granting sanctions under MCL 600.2591(3)(i), the Trial Court actually and necessarily litigated that Chaban caused a willful and malicious injury.

The second basis of the Sanctions Judgment, MCR 2.114(D)(3), provides:

> (D) **Effect of Signature.** The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>    (1) he or she has read the document;
>    (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>    *(3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.*
> (E) **Sanctions for Violation.** If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable

9

expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

(emphasis added). The Sanctions Judgment explicitly indicates that Chaban was sanctioned for signing one or more documents as an attorney that were interposed for an "improper purpose." Because that provision includes the language "such as", followed by certain examples of improper purposes, such does not necessarily include a finding that Chaban signed the documents for those particular improper purposes stated in the rule. However, as discussed earlier and as will be further discussed, the Sanctions Judgment perforce found that Chaban was sanctioned for causing a "willful and malicious injury" under other provisions. Thus, while MCR 2.114(D)(3) is not by itself an independent basis for granting collateral estoppel effect to the Sanctions Judgment, it is consistent with the Court's conclusion that the Sanctions Judgment's other two bases are themselves sufficient.

The third basis for the Sanctions Judgment, MCR 7.216(C), provides:

(C) Vexatious Proceedings.
(1) The Court of Appeals may, on its own initiative or on the motion of any party filed under MCR 7.211(C)(8), assess actual and punitive damages or take other disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious because
*(a) the appeal was taken for purposes of hindrance or delay or without any reasonable basis for belief that there was a meritorious issue to be determined on appeal*; or
(b) a pleading, motion, argument, brief, document, or record filed in the case or any testimony presented in the case was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court.
(2) Damages may not exceed actual damages and expenses incurred by the opposing party because of the vexatious appeal or proceeding, including reasonable attorney fees, and punitive damages in an added amount not exceeding the actual damages. The court may remand the case to the trial court or tribunal for a determination of actual damages.

(emphasis added). MCR 7.112 permits Circuit Courts, such as the Trial Court, to issue relief provided in MCR 7.216. The Sanctions Judgment stated:

> On its own motion, the Court of Appeals also held "that defendants are entitled to assess actual damages and expenses associated with this vexatious appeal, MCR 7.216(C)(1)(a); thus, we remand this matter to the trial court for determination of defendants' award, MCR 7.216(C)(2)."

*Sanctions Judgment* at 2 (quoting *Court of Appeals Opinion* at 17). MCR 7.216(C)(2) references "[d]amages… *incurred by the opposing party*" and thereby satisfies the "injury" requirement. (emphasis added). This portion of the Sanctions Judgment necessarily included an element of "willful" injury. The operative phrase in MCR 7.216(C)(2) (which states "the appeal was taken for purposes of hindrance or delay or without any reasonable basis for belief that there was a meritorious issue to be determined on appeal") speaks to two possible bases for a ruling thereunder: (1) an appellant's subjective intent; or (2) whether an appellant's belief was objectively reasonable. In either one, there exists an element of purposeful or deliberate scienter on the part of an appellant (over and above mere negligence or recklessness) and/or a belief that the injury was substantially certain to result from the involved act. In any case, such a finding can be seen as satisfying the "willful injury" requirement. Similarly, the "malicious injury" requirement is satisfied because Chaban's appeal was taken in conscious disregard of his duties as an attorney or without just cause or excuse (and indeed Chaban was thus sanctioned by those state courts for exactly that). The elements of "without just cause or excuse" (as contained in the referred-to definition of "malicious") are essentially the very basis of MCR 7.216(C)(1)(a), as well as the meaning of "vexatious." *Black's Law Dictionary* (10th ed. 2014) defines "vexatious" to mean "without reasonable or probable cause or excuse; harassing; annoying." Therefore, the face of the Sanctions Judgment (to say nothing of the light of and in the context by and in which it was

11

rendered) incorporates and constitutes sufficient findings that Chaban caused a willful and malicious injury. With that, all of the elements of collateral estoppel are met.

As defenses, Chaban argues that both the Sanctions Judgment and the Court of Appeals Opinion are void because Chaban was in fact dismissed from the case by the Trial Court with Freeman's consent on January 10, 2012, and thus those courts no longer had jurisdiction over him individually. That argument is unpersuasive and irrelevant. The dismissal of the case against Chaban does not deprive the court of the right to sanction him for acts he engaged in while he was involved as an attorney in the subject proceedings. Further, regardless of what took place in the state courts at that time, it is in fact true that the Court of Appeals thereafter ordered the Trial Court to sanction Chaban *individually*. It is also in fact true that the Trial Court thereafter sanctioned Chaban *individually*, stating in the Sanctions Judgment:

> Turning to Chaban's objections, this Court clearly has the authority to issue sanctions against him. Chaban is listed as an attorney of record (secondary attorney) representing both Mark Chaban, P.C. and Tindall & Co., P.C. … Finally, and most importantly, the Court of Appeals has already affirmed this Court's decision to award fees "against plaintiff's counsel."

*Sanctions Judgment* at 5. For the reasons stated in *In re Singleton*, 230 B.R. 533, 536 (B.A.P. 6th Cir. 1999), because of a bankruptcy court's jurisdictional limitations and the *Rooker-Feldman* doctrine, this Court cannot simply ignore the Sanctions Judgment or look beyond its four corners. Chaban's arguments are inextricably intertwined with the substance of the Sanctions Judgment and the Court of Appeals Opinion and his arguments here can only succeed if the involved state court(s) wrongly decided the issues before them. *Id.* at 537. Chaban clearly wishes to raise issues with the substance of those decisions. But such issues are not properly before this Court.[3] The

---

[3] Even if this not a classic situation where the *Rooker-Feldman* doctrine is implicated, given that

Bankruptcy Code was not intended to give litigants a second (or third) chance to challenge a state court judgment. *Id.* at 538.

Chaban also argues that Freeman is not a proper party in interest to bring this adversary proceeding because he is not in fact *an assignee* of the Sanctions Judgment, but rather is only *a secured creditor* of the judgment creditors' interests in the Sanctions Judgment. The Court has already foreclosed that argument. *See Opinion Incident to Motion of Fred Freeman to Withdraw as Attorney and Affirming Standing of Freeman to Pursue this Proceeding* (Dkt. 77) ("Freeman became the owner of the judgment and his ensuing collection efforts are in that capacity; which is one where he is no longer representing the assignors. The assignors by reason of the assignment, no longer have any effective interest in that assigned judgment or indeed the ability themselves to pursue its collection against these who are obligated thereunder."). For whatever it is worth, even if Chaban's "secured creditor" argument was accepted, the result would most likely be for Freeman to bring this action as attorney for the judgment creditors, rather than as an assignee of the judgment.

For the foregoing reasons, the elements of collateral estoppel are met and the Sanctions Judgment is nondischargeable pursuant to § 523(a)(6).

The § 523(a)(2)(A) Count

The Court having granted Freeman's Motion for Summary Judgment on the § 523(a)(6) count, it need not discuss or opine on Freeman's § 523(a)(2)(A) arguments.

---

Chaban's attacks on the State Court Judgments are here being asserted as *a defense* rather than as a separate federal court suit, this Court is nonetheless without jurisdiction to set aside the State Court Judgment and such constitutes an independent basis for this decision.

<u>Conclusion</u>

Freeman's Motion for Summary Judgment is granted as to the § 523(a)(6) count only, and denied as to the remaining counts. Chaban's cross Motion for Summary Judgment is denied in its entirety. The Court need not address the other issues raised in the Motions. The Court will contemporaneously enter an appropriate order.

.

**Signed on June 10, 2015**

                                                 **/s/ Walter Shapero**
                                        **Walter Shapero**
                                        **United States Bankruptcy Judge**